UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Post Consumer Brands, LLC,

Plaintiff,

v.

General Mills, Inc., and General Mills Sales, Inc.,

Defendants.

Case No. 17-cv-4915 (JNE/TNL)
MEMORANDUM
**(FILED UNDER SEAL)**

---

Steven E. Garlock, Matthew A. Braunel, and Katherine E. Colvin, Thompson Coburn LLP, and Aimée D. Dayhoff, Winthrop & Weinstine, P.A., appeared for Post Consumer Brands, LLC.

Michael E. Florey and Maria Elena Stiteler, Fish & Richardson P.C., and Charles C. Sipos and Ryan J. McBrayer, Perkins Coie LLP, appeared for General Mills, Inc., and General Mills Sales, Inc.

---

Post Consumer Brands, LLC (Post), brought this action against General Mills, Inc., and General Mills Sales, Inc. (collectively, General Mills), for infringement of United States Patent No. D798,091 (filed April 1, 2016), which is titled "Shelf Divider for Display of Bagged Food Items." The case is before the Court on Post's Motion for Preliminary Injunction.[1] For the reasons set forth below, the Court denies Post's motion.

[1] Post brought the action in the United States District Court for the Eastern District of Missouri. General Mills moved to dismiss or to transfer it. General Mills also moved to stay proceedings on Post's motion for a preliminary injunction pending resolution of General Mills' motion to dismiss or to transfer. The action was transferred to this District. General Mills' motion to stay is denied as moot.

# I. BACKGROUND

## A. Post's shelf divider and the '091 Patent

Post produces branded and private-label cereals and distributes them to retailers across the nation. Most of its Malt-O-Meal branded cereals are packaged and sold in plastic, resealable bags without exterior boxes. In the past, Post used wire bins with horizontal signs to display its bagged cereals on retailers' shelves. A picture of Post's wire bins appears below.

**Post's wire bins**



In 2015, Post developed a shelf divider to display its bagged cereals. It features a trapezoidal front panel that is connected to a side panel. A product image panel fits in the trapezoidal front panel to identify the cereal. A picture of Post's shelf divider with a product image panel appears below.

In April 2016, Post applied for a design patent. The '091 Patent was issued in September 2017. It claims "[t]he ornamental design for a shelf divider for display of bagged food items, as shown and described" in seven figures, which appear below. Figure 1 "is a perspective view of the design showing the left front and top sides thereof." Figure 2 "is a front view of the design." Figure 3 "is a rear view of the design." Figure 4

**Post’s shelf divider**




“is a left side view of the design.” Figure 5 “is a right side view of the design.” Figure 6 “is a top view of the design.” Figure 7 “is a bottom view of the design.” “Broken lines in the drawing figures represent environment and do not constitute part of the claimed design.”

**The ’091 Patent’s figures**






## B. General Mills' shelf divider

General Mills competes with Post and others in the cereal market. For decades, General Mills sold its cereals in boxes. In 2016 and 2017, General Mills considered selling, and eventually decided to sell, certain cereals in plastic, resealable bags. To display its bagged cereals on retailers' shelves, General Mills developed the following

shelf divider. A product image panel fits in the trapezoidal front panel to identify the cereal.



**General Mills' shelf divider**




Post brought this action against General Mills, alleging that General Mills' shelf divider infringes the '091 Patent. Post moved for a preliminary injunction to prohibit General Mills from continuing to make, use, sell, offer to sell, or import General Mills' shelf divider.

## II. DISCUSSION

### A. Post's Motion for Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see*

*Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24; *see Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1363 (Fed. Cir. 2016).

"With respect to establishing a likelihood of success on the merits, 'the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent.'" *Tinnus Enters.*, 846 F.3d at 1202 (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009)). In its memorandum in support of its motion, Post asserted that it will likely prove General Mills' shelf divider infringes the '091 Patent, *see Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc) (holding "that the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed"), that the '091 Patent is presumed valid, *see* 35 U.S.C. § 282(a) (2012), and that General Mills likely copied Post's shelf divider. General Mills responded that the '091 Patent is invalid and that General Mills' shelf divider does not infringe the '091 Patent.

The Federal Circuit summarized how to assess a patent's validity in the context of a patentee's motion for a preliminary injunction:

> *Before trial*, when the question of validity arises at the preliminary injunction stage, the application of these burdens and presumptions is tailored to fit the preliminary injunction context. To begin, the patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation. Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of

> validity satisfies the patentee's burden of showing a likelihood of success on the validity issue.
>
> If, instead, the alleged infringer responds to the preliminary injunction motion by launching an attack on the validity of the patent, the burden is on the challenger to come forward with evidence of invalidity, just as it would be at trial. The patentee, to avoid a conclusion that it is unable to show a likelihood of success, then has the burden of responding with contrary evidence, which of course may include analysis and argument.
>
> While the evidentiary burdens at the preliminary injunction stage track the burdens at trial, importantly the ultimate question before the trial court is different. . . . [T]he trial court "does not resolve the validity question, but rather must . . . make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." Instead of the alleged infringer having to persuade the trial court that the patent is invalid, at this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue.

*Titan Tire*, 566 F.3d at 1377 (second alteration in original) (citations omitted). "[T]he trial court first must weigh the evidence both for and against validity that is available at this preliminary stage in the proceedings." *Id.* at 1379. "[I]f the trial court concludes there is a 'substantial question' concerning the validity of the patent, meaning that the alleged infringer has presented an invalidity defense that the patentee has not shown lacks substantial merit, it necessarily follows that the patentee has not succeeded in showing it is likely to succeed at trial on the merits of the validity issue." *Id.* "[T]he alleged infringer at the preliminary injunction stage does not need to prove invalidity by the 'clear and convincing' standard that will be imposed at trial on the merits." *Id.* "[W]hen analyzing the likelihood of success factor, the trial court, after considering all the evidence available at this early stage of the litigation, must determine whether it is more

likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." *Id.*

General Mills asserted that the '091 Patent is obvious. The Federal Circuit summarized how to analyze an assertion that a design patent is obvious:

> Obviousness is a question of law that is reviewed de novo, based on underlying factual questions that are reviewed for clear error following a bench trial. The underlying factual inquiries include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of non-obviousness. . . .
>
> In the context of design patents, "'the ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved.'" To answer this question, a court must first determine "whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design." That inquiry involves a two-step process. First, the court must identify "a single reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" The "basically the same" test requires consideration of the "visual impression created by the patented design as a whole." We have noted that "the trial court judge may determine almost instinctively whether the two designs create basically the same visual impression," but "must communicate the reasoning behind that decision."
>
> Once the primary reference is found, other "secondary" references "may be used to modify it to create a design that has the same overall visual appearance as the claimed design." These secondary references must be "'so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other.'"

*MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014) (citations omitted); *see Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).

In its memorandum in opposition to Post's motion, General Mills focused on two shelf dividers to support its contention that the '091 Patent is obvious: (1) a shelf divider that Post used in Houston, Texas, more than one year before the '091 Patent's filing date (Houston Divider), and (2) the FFR diagonal divider. General Mills asserted that neither divider was disclosed to the United States Patent and Trademark Office during prosecution of the '091 Patent. Each divider has a trapezoidal front panel. A photograph of the Houston Divider and a drawing of the FFR divider that appears in a catalog are shown below.



**Post's Houston Divider**



**The FFR diagonal divider**



In its reply, Post highlighted evidence that General Mills had copied Post's shelf divider; distinguished the Houston Divider from the '091 Patent— the side panel of the Houston Divider extends past the front panel, forming an "aisle violator"; asserted that its use of the Houston Divider was experimental; and argued that the FFR diagonal divider, in combination with another patent, is not a reliable or invalidating combination.

The day before the motion hearing, General Mills filed evidence that Post used shelf dividers that contain trapezoidal front panels in Utah more than one year before the '091 Patent's filing date. The shelf dividers used in Utah did not contain aisle violators.

At this preliminary stage of the action, the Court concludes that General Mills has presented an invalidity defense that Post has not shown lacks substantial merit. The record contains prior art references whose design characteristics appear to be basically the same as the design claimed in the '091 Patent. They appear to be readily modified to create a design that has the same overall visual appearance as the design claimed in the '091 Patent. As to the Houston Divider, the '091 Patent's inventor testified that supermarkets disfavor aisle violators and that Post would not be able to use aisle violators. Post's argument that use of the Houston Divider was experimental appears

unlikely to prevail. The facts of the case on which Post relied are quite different from Post's use of the Houston Divider in grocery stores. *See Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1199-1200 (Fed. Cir. 1994). There is evidence in the record that General Mills copied Post's shelf divider. There is also evidence in the record that Post's shelf divider was well received. For instance, some retailers asked to use Post's shelf divider to display non-Post cereals. Post declined. It worked with one retailer to design a different shelf divider for use with the retailer's private-label cereals. Although secondary considerations "*can be* the most probative evidence of non-obviousness in the record," *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1310 (Fed. Cir. 2010) (emphasis added), the Court is not persuaded that General Mills' invalidity defense lacks substantial merit, *see Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1347 (Fed. Cir. 2017). Having considered the available evidence regarding invalidity, the Court concludes that there is a substantial question concerning the validity of the '091 Patent.

Because there is a substantial question concerning the'091 Patent's validity, Post has not demonstrated that it is likely to succeed on the merits. The Court therefore denies Post's motion for a preliminary injunction. *See Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1364 (Fed. Cir. 2016) ("[W]e maintain our view that '[a] preliminary injunction should not be granted if there is a substantial issue of patent validity.'"); *Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000) ("[B]ecause 'a movant must establish both a likelihood of success on the merits and irreparable harm . . . the district court may deny a preliminary injunction based on the movant's failure to

establish either of these two crucial factors without making additional findings respecting the other factors.'").

### B. General Mill's motion to exclude

General Mills moved to exclude portions of the declaration of Ronald Kemnitzer, an expert retained by Post, related to his infringement analysis. Having denied Post's motion because there is a substantial question concerning the validity of the '091 Patent, the Court denies General Mills' motion without prejudice to its renewal at an appropriate time.

### C. Post's motion in limine

Post moved the Court to accord no weight to General Mills' "alleged prior art and related testimony." The Court denies Post's motion. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings.").

## III. CONCLUSION

The Court will issue a separate order that is consistent with this Memorandum.

Dated: December 7, 2017

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge